UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAN DRINKARD,

        Plaintiff,                                    Civil Case No. 12-14598

v.                                                HON. MARK. A GOLDSMITH

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. 3)
AND DENYING PLAINTIFF'S MOTION TO AMEND (DKT. 12)**

**I. INTRODUCTION**

      This is a civil rights case brought under 42 U.S.C. § 1983. Plaintiff Nan Drinkard, in her individual capacity and as the representative of the Estate of Nancy Dailey alleges that Defendants Michigan Department of Correction (MDOC), four John Doe parole officers, and four Jane Doe parole officers failed to supervise two parolees who had been released from Michigan state prison. Plaintiff alleges that the failure to supervise two parolees allowed the parolees to murder Nancy Dailey, Plaintiff's aunt. Plaintiff further alleges that the murder of Dailey was a deprivation of her rights under the Fourth and Fourteenth Amendments.

      Before the Court are two motions: MDOC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 3) and Plaintiff's motion to amend (Dkt. 12). Both motions are fully briefed. Oral argument was heard on January 31, 2013 for the motion to dismiss and on April 11, 2013 for the motion to amend. For the reasons set forth below, the Court grants MDOC's motion to dismiss and denies Plaintiff's motion to amend.

## II. BACKGROUND

Plaintiff is Nan Drinkard, proceeding individually, and as the niece of and the duly appointed personal representative of the estate of Nancy Dailey, deceased. Compl. ¶ 4. Defendants are the MDOC, a governmental agency of the State of Michigan, and John and Jane Does, "currently unknown probation and parole officers." Id. ¶¶ 5-6.

Plaintiff alleges that MDOC has made mistakes in releasing and supervising parolees, which has allowed parolees to commit violent crimes. Id. ¶¶ 9-12. At issue in this case is the murder of Nancy Dailey. She was murdered in her Royal Oak home on November 20, 2011, by Alan Wood and Tonia Watson, two parolees with lengthy criminal histories. Id. ¶¶ 14-17. Plaintiff alleges that Wood and Watson should not have been able to murder Dailey because, as they had violated the terms of their parole and were suspects in three pending police investigations, they should have been returned to prison. Id. ¶¶ 18-31. On November 20, 2011, Wood and Watson robbed Dailey's home in Royal Oak and murdered her. Id. ¶¶ 32-35. MDOC suspended the parole officers assigned to Wood and Watson and was aware of systemic problems in its parole program. Id. ¶¶ 36-37. In particular, Plaintiff alleges that:

> MDOC was aware of the systemic problems that led to the tragic result in this case. Several employees, law enforcement officials, and government officials report to high-ranking MDOC officials that violent offenders were being released and that violent crime and murders, such as the one of Nancy Dailey, was the likely result.

Id. ¶ 37.

The complaint contains two counts under 42 U.S.C. § 1983: a violation of the Fourth and Fourteenth Amendments and a "violation of civil rights through supervision, customs, policies, acquiescence, and training." Id. ¶¶ 40-54. Plaintiff seeks damages, costs, and fees, and

2

injunctive relief requiring MDOC to adopt "policies, procedures, and customs" and "adequate staffing" to prevent further harm to the public. Id. ¶¶ 50, 54.

After Plaintiff filed her complaint, MDOC filed the motion to dismiss (Dkt. 3), arguing that it was immune from Plaintiff's claims under sovereign immunity afforded by the Eleventh Amendment. Plaintiff filed a response to the motion to dismiss (Dkt. 7), acknowledging MDOC's argument that sovereign immunity barred Plaintiff's claims. Plaintiff then sought to amend her complaint to name the Director of MDOC in his individual capacity and attached an amended complaint to the response (Dkt. 7-1). MDOC filed a reply (Dkt. 9), arguing that amending the complaint would be futile. Pursuant to an Order of the Court, Plaintiff filed a sur-reply to address the futility issue raised by MDOC (Dkt. 11). The Court heard oral argument on January 31, 2013.

After the Court took the motion to dismiss under advisement, Plaintiff filed a motion to amend her complaint by adding a claim for a violation of the Michigan Freedom of Information Act (Dkt. 12). MDOC filed a response (Dkt. 14). The Court heard oral argument on the motion to amend on April 4, 2013.

### III. ANALYSIS

MDOC moves to dismiss Plaintiff's complaint, arguing that the Eleventh Amendment affords the State of Michigan and its departments and agencies, including MDOC, immunity from suit. In response, Plaintiff agrees that Eleventh Amendment bars her claim against MDOC. But Plaintiff argues that the Eleventh Amendment does not extend to the individuals "who make up MDOC" and that the proper defendant should be Daniel Heynes, the Director of MDOC, because he admitted to problems with MDOC's parolee supervision and failed to properly set

3

policies and procedures to train MDOC staff. Plaintiff asserts that Eleventh Amendment immunity does not extend to supervisory officials.

Plaintiff further argues that she should be allowed to amend her complaint under Federal Rule of Civil Procedure 15(a)(2). Attached to Plaintiff's response to the motion to dismiss is Plaintiff's proposed first amended complaint (Dkt. 7-1). The proposed first amended complaint is almost identical to the original complaint, alleging the same facts and relief. However, instead of MDOC, Plaintiff names Director of MDOC, Daniel Heynes, in his individual capacity, as a defendant.

In MDOC's reply brief, MDOC argues that Plaintiff's attempt to amend is improper because Plaintiff has not followed the Federal Rules of Civil Procedure. Regarding futility, MDOC asserts that, even if Plaintiff could amend the complaint to name Heynes, such an amendment would fail because (i) Plaintiff has not shown that Dailey faced a special danger posed by the parolees; (ii) Heynes cannot be held responsible under respondeat superior, and (iii) Heynes cannot be held liable in his individual capacity for failing to supervise or train MDOC employees because Plaintiff has not alleged that he encouraged the specific parole violations or in some way participated in them. In Plaintiff's sur-reply brief, Plaintiff argues that this case involves the state-created danger doctrine. Plaintiff alleges that the danger posed to Dailey was not remote because the police had informed MDOC employees of the danger posed by Wood and Watson and the parole officers still failed to supervise them properly.

Because Plaintiff concedes MDOC's immunity, the Court examines the presentation of the amended complaint and whether Plaintiff has pled a proper claim for relief against Heynes. With regard to the proposed amended complaint, MDOC argues that Plaintiff's amended complaint is improperly made. However, the Federal Rules do not prescribe a specific method

for amending a complaint. See Greater Lansing Ambulatory Surgery Ctr. Co., L.L.C. v. Blue Cross & Blue Shield of Michigan, 952 F. Supp. 516, 518 n.1 (E.D. Mich. 1997) (granting amendment of complaint where proposed amended complaint was attached to motion for remand and plaintiffs had not acted in bad faith or for dilatory purpose); 6 Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 1485 (2d ed.) (1990) ("Rule 15(a) does not set forth any specific procedure for obtaining leave to amend.  Typically, it is sought by a motion addressed to the court's discretion").  Furthermore, leave to amend should "be freely given when justice so requires."  Foman v. Davis, 371 U.S. 178, 182 (1962).  To prevent the amending of a pleading, the non-moving party should demonstrate prejudice.  Bridgeport Music v. Dimension Films, 383 F.3d 390, 402 (6th Cir. 2004) ("Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.").

     Although Plaintiff did not seek to amend by filing a motion, the text of the response is unambiguous that Plaintiff asserts her claims against Heynes.  Furthermore, MDOC does not argue that Heynes would incur prejudice by granting the amendment.  Therefore, for purposes of determining the motion to dismiss and motion to amend, the Court holds that Plaintiff's response is sufficient to permit the Court to address whether the proposed amended complaint should be allowed to be filed.

     The Court must next determine whether Plaintiff states a § 1983 claim against Heynes in his individual capacity.  As Defendant has moved under Rule 12(b)(6), the Court is required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." Dubay v. Wells, 506 F.3d 422, 426 (6th Cir. 2007). The complaint does not need "detailed factual allegations," but requires something more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Consequently, a complaint "survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Reilly v. Vadlamudi, 680 F.3d 617, 622-623 (6th Cir. 2012). (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations omitted).

With regards to Plaintiff's claims, Sixth Circuit law states that "§ 1983 provides a federal cause of action for civil damages against an individual acting under color of state law who deprives another of "'rights, privileges, or immunities secured by the Constitution and laws.'" Jones v. Reynolds, 438 F.3d 685, 689 (6th Cir. 2006) (quoting 42 U.S.C. § 1983).[1] To determine if a government official is shielded from civil liability, a court must (1) determine whether the official violated an individual's rights and (2) whether those rights were "clearly established" at the time of the incident. Id. at 690. Although the Fourteenth Amendment does not explicitly recognize an individual's right to hold public officials constitutionally responsible for private acts of violence, the Sixth Circuit has recognized a claim for a "state created danger." Id. The Sixth Circuit has held that when the state "causes or greatly increases the risk of harm to its citizens through its own affirmative acts, it has established a special danger and a duty to protect its citizens from that risk." Id. (internal quotation marks omitted). To bring a "state created danger" claim, the plaintiff must show three elements:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party;

---

[1] Both complaints reference a Fourth Amendment violation, but the parties do not address this allegation. Obviously, there was not an illegal search or seizure in this case and the Court focuses only on the alleged Fourteenth Amendment violation.

> (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and
> (3) the state knew or should have known that its actions specifically endangered the plaintiff

Id.

Here, Plaintiff has not pled facts sufficient to state a claim for state-created danger. For the first element, Plaintiff has pled facts that MDOC's lax supervision of parolees increased the risk that Dailey could suffer an act of violence for failing to supervise parolees in general, and specifically Watson and Wood. However, Plaintiff has not alleged facts supporting the latter two elements, even when affording Plaintiff factual inferences under the Rule 12(b)(6) standard. Plaintiff does not allege facts that the state created a special danger for Nancy Dailey, as opposed to the public at large. Plaintiff recounts in the amended complaint the various parole violations that Watson and Wood committed, but none of these violations related to Nancy Dailey specifically. See Compl. ¶¶19-20 (Watson fails to report to his parole officer); ¶ 22 (a family reports a gun stolen after Wood worked at their house); ¶ 23 (two women report credit card theft after Watson and Wood had worked in their home); ¶¶ 27, 29 (Wood and Watson again fail to report to their parole officers). Further, Plaintiff has not pled facts that the state knew or should have known that failing to supervise Wood and Watson specifically endangered Dailey. Therefore, the Court holds that Plaintiff has not properly pled a state-created danger claim.

In Plaintiff's sur-reply, Plaintiff states that the "Circuits have recognized and applied the state-created danger theory in situations similar to this case." Sur-Reply at 3 (Dkt. 11). However, Plaintiff does not cite any authority similar to the instant case. Plaintiff, instead, cites Nishiyama v. Dickson County, 814 F.2d 277 (6th Cir. 1987). In Nishiyama, the plaintiff pled a § 1983 claim against a county and two police officers for failure to supervise an inmate to whom had been entrusted a police car. Specifically, a sheriff and a deputy sheriff "had a policy and

7

practice of several months standing which allowed [the inmate] to have unsupervised use of [county] patrol cars equipped with standard blue flashing lights and official identifying markings." Nishiyama, 814 F.2d at 279. The inmate "used the cars to perform official and personal tasks for the two officers and personal tasks for himself." Id. One day, the inmate drove the police car, and "stopped several motorists by flashing the patrol car's blue lights." Id. When county officials learned that a sheriff's car was stopping motorists in their county, they notified the county dispatcher, who notified the sheriff and deputy sheriff, who did nothing. Id. During the inmate's ten-hour possession of the car, he stopped another car, approached the driver, and beat the driver to death. Id. The driver's family filed a § 1983 claim against the county, the sheriff, and deputy sheriff. In reversing a dismissal under Rule 12(b)(6) by the district court, the Sixth Circuit explained that the officers had an "established practice" of giving the inmate the car. Nishiyama, 814 F.2d at 281. Furthermore, "the officers gave [the inmate] the car and the freedom to commit the crime." Id.

Our case is nothing like Nishiyama. Here, the complaint lacks any specific act committed by Heynes that gave both the instrumentality and the freedom to Woods and Watson to murder Dailey. And, unlike the personal relationship between the officers and the perpetrator in Nishiyama, no relationship of any kind existed between Heynes and Woods and Watson in the present case.[2]

---

[2] Plaintiffs also fail to point out that Nishiyama is no longer good law because the Sixth Circuit ruled that the plaintiffs had stated a claim for a deprivation of substantive due process under a "gross negligence" standard. Nishiyama, 814 F.2d at 282 ("We believe that the allegation in the present complaint of gross negligence on the part of the defendants was sufficient to charge them with arbitrary use of government power."). The court explained "gross negligence" to encompass conduct which arises if a person "intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." Id. However, as

8

The other cases Plaintiff cites are distinguishable and non-controlling. See Freeman v. Ferguson, 911 F.2d 52 (8th Cir. 1990) (reversing dismissal of § 1983 case where the plaintiff alleged that a police chief interfered on behalf of his friend, the plaintiff's husband, to deny the plaintiff protective services, even though the plaintiff had implored police to protect her from her husband); Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989) (material fact issue existed as to whether police officer placed passenger specifically at risk, where officer had pulled over and arrested a drunk driver, impounded driver's car, but abandoned passenger in a high-crime area at night and the passenger was later raped); Hardmon v. Cnty. of Lehigh, 613 F. Supp. 649 (E.D. Pa. 1985) (parolee harassed victim while on work release; victim's mother then complained to police; parolee was furloughed and attempted to murder the victim). Therefore, the Court rejects Plaintiff's argument that Heynes actions or non-actions amounted to a state-created danger to Dailey.

Plaintiff's second claim is that Heynes failed to supervise or train MDOC employees and parole officers. For a supervisor to be held liable for failing to train or to supervise, the supervisor must have "either encouraged the specific incident of misconduct or in some other way directly participated in it." Phillips v. Roane Cnty., 534 F.3d 531, 543 (6th Cir. 2008). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Id.

---

explained above and by other courts, gross negligence is not the current standard. See, e.g., Jones, 38 F.3d at 694-695 ("With respect to non-custodial cases, one of them, Nishiyama . . . is no longer an accurate statement of the law after DeShaney and Collins.") (brackets omitted); Lewellen v. Metro. Gov't, 34 F.3d 345, 350 (6th Cir. 1994) ("Nishiyama's test of a substantive due process violation, relying as it does on an explication of the standard for a particular type of 'gross negligence,' simply cannot be reconciled with what the Supreme Court said in Harker Heights.").

9

In this case, the Court agrees with MDOC's argument that Plaintiff has not made an allegation "to support a finding of Heynes' personal involvement in the alleged incidents giving rise to this case." Def.'s Reply at 3 (Dkt. 9). The governing complaint is devoid of facts regarding how Heynes encouraged or somehow participated in the parole officers' handling of Wood and Watson or the parolees' acts. The complaint merely contains an allegation that Heynes stated in an interview that MDOC needed to "tighten up its supervision." Compl. ¶ 9. The complaint also contains an allegation that "MDOC was aware of the systemic problems" and that MDOC employees "reported to high-ranking MDOC officials that violent offenders were being released and that violent crime and murders" could result. Compl. ¶ 37.

Assuming these facts are true, they still do not indicate personal involvement by Heynes in the lax supervision of Watson and Woods. Moreover, the facts do not indicate that Heynes "knowingly acquiesced" in "the unconstitutional conduct" of the officers charged with supervising Watson and Woods. There simply is no "conduct on the supervisor's part to which [Plaintiff] can point that is directly correlated with the [Plaintiff's] injury." Essex v. Cnty. of Livingston, No. 11-2246, 2013 WL 1196894 (Table), at *3 (6th Cir. Mar. 25, 2013). This case contrasts with other cases where courts have found a fact issue regarding whether a supervisor had liability. See, e.g., Campbell v. City of Springboro, 700 F.3d 779, 790 (6th Cir. 2012) (fact issue existed whether police supervisor failed to supervise canine unit by allowing officers to use canine after canine's training had lapsed, ignoring requests regarding the need to keep canine well-trained by the officer who utilized the canine, failing to require appropriate supervision of the canine unit, and failing to establish and publish an official K-9 unit policy).

The authorities cited by Plaintiff speak to different points of law or have substantially different facts. See City of Canton v. Harris, 489 U.S. 378, 388 (1989) (holding that "the

inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (holding that, where police chief wrote letter to plaintiff stating that the police department would not investigate the plaintiff's complaints of police conduct, supervisor liability could be imposed for inadequate training, supervision, or control of subordinates, acquiescence in constitutional deprivations, or conduct that showed indifference to the rights of others); Johnson v. Lockhart, 941 F.2d 705 (8th Cir. 1991) (involving inmate who was neglected by the prison authorities in violation of his Eighth Amendment rights). Here, the governing complaint alleges that Heynes made comments to the media about MDOC's supervision in general. Plaintiff does not allege any facts that link Heynes to Woods, Watson, or Dailey.

The Court now turns to Plaintiff's motion to amend her complaint to add a claim for a violation of the Michigan Freedom of Information Act. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009). Having disposed of Plaintiff's § 1983 claim, it would be inappropriate to exercise jurisdiction over the proposed state-law claim where there are no claims of original jurisdiction before the Court. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim and denies the motion to amend.

## IV.  CONCLUSION

Accordingly, for the reasons explained above, the Court grants MDOC's motion to dismiss (Dkt. 3), denies Plaintiff's motion amend (Dkt. 12), and dismisses Plaintiff's complaint.

SO ORDERED.

Dated: July 3, 2013                           s/Mark A. Goldsmith  
     Flint, Michigan                       MARK A. GOLDSMITH  
                                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 3, 2013.

                                             s/Amanda Chubb for Deborah J. Goltz  
                                             DEBORAH J. GOLTZ  
                                             Case Manager